UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HEATHER BUTLER, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:12-cv-1506-JMS-TAB |
| | ) | |
| SOUTHWEST AIRLINES CO., | ) | |
| *Defendant*. | ) | |

## ORDER

Plaintiff Heather Butler brings this discrimination suit against her former employer Defendant Southwest Airlines Co. ("Southwest"). [Dkt. 1-1.] Currently pending before the Court is Southwest's Motion for Summary Judgment, [dkt. 34], and Ms. Butler's Motion for Leave to File Surreply, [dkt. 52]. For the reasons that follow, the Court **GRANTS** Southwest's Motion for Summary Judgment and **DENIES** Ms. Butler's Motion for Leave to File Surreply.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters

1

stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).  The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*,

2

325 F.3d at 898.  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

### A.    Procedural Background and Motion for Leave to File Surreply

Before addressing the merits of the parties' motions, the Court must first address several issues regarding Ms. Butler's briefing and compliance with the Federal and Local Rules. Southwest maintains that Ms. Butler's response brief in opposition to its Motion for Summary Judgment was untimely filed and failed to comply with the Local Rules in several other respects. [Dkt. 51 at 1-7.]  Because of these alleged deficiencies, Southwest argues that Ms. Butler's brief should not be considered in deciding its motion, and Southwest also requests that the Court sanction Ms. Butler by awarding it attorneys' fees for the time spent responding to her belatedly filed brief.  [*Id.* at 1-4.]  Furthermore, even if Ms. Butler's brief is deemed timely filed, Southwest maintains that many of her arguments and factual assertions should not be considered because she failed to comply with various other Local Rules.  [*Id.* at 4-7.]  Because these contentions were raised in Southwest's reply brief, Ms. Butler seeks an opportunity to respond to them via her Motion for Leave to File Surreply.  [Dkt. 52.]  For the reasons explained below, the Court denies her motion.

Turning first to the timeliness question, Ms. Butler timely filed her response brief in opposition to Southwest's Motion for Summary Judgment.  Pursuant to Local Rule 56-1(b), a party opposing a summary judgment motion must file and serve her response brief "within 28 days after the movant serves the motion."  Southwest filed its Motion for Summary Judgment on September 13, 2013, [dkt. 34] and Ms. Butler electronically filed her response brief on October 15, 2013, [dkt. 41].  Southwest correctly recognizes that October 11 is twenty-eight days from

September 13.  However, when a document is filed electronically, as Ms. Butler's response brief was, Federal Rule of Civil Procedure 26(c) grants three additional days to timely file the document.  *See* Fed. R. Civ. P. 26(c).  Therefore, Ms. Butler could timely file her response brief on October 14.  But given that October 14 was a federal holiday during which time the court was closed, Ms. Butler could timely file her response brief the next business day, October 15, which she did, [dkt. 41].  Accordingly, Ms. Butler's response brief was timely filed and the Court will consider it in deciding Southwest's Motion for Summary Judgment.

Unlike its contentions regarding the timeliness of Ms. Butler's response brief, Southwest's arguments regarding the brief's substantive deficiencies are well-taken.  Before delving into the specific deficiencies, however, it is worth noting that these missteps are not Ms. Butler's first during this litigation.  For example, Ms. Butler acknowledged that she made false assertions to the Court in her motion to amend the case management plan.  [Dkt. 33 at 1.]  She also ignored deadlines set forth in the case management plan.  [*Id.*]  Magistrate Judge Baker ultimately declined to sanction Ms. Butler or her counsel for this conduct, but noted that such conduct was indeed sanctionable and that "further missteps in this or other cases will not be tolerated."  [*Id.*]  Not long after, the Court was required to strike Ms. Butler's response brief because, among other reasons, the format in which it was filed violated the Local Rules.  [Dkt. 47 at 1.]  She also impermissibly filed additional exhibits in opposition to Southwest's Motion for Summary Judgment the day after she filed her response brief and original exhibits.  [*Id.*]  The Court permitted Ms. Butler to correct these errors.  [*Id.*]  In sum then, the Court has, up to this point, more than forgivingly dealt with Ms. Butler's errors.

Despite Judge Baker's warning regarding further missteps, Ms. Butler filed a woefully deficient response brief that failed to comply with the Federal and Local rules in several respects.

Although the Court ultimately will not impose monetary sanctions against Ms. Butler or her counsel at this time, the substantive deficiencies with Ms. Butler's response brief cannot be ignored.  First and foremost among them is Ms. Butler's failure to include the *Statement of Material Facts in Dispute* section required by Local Rule 56-1(b).  *See* Local Rule 56-1(b) ("The response must include a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment.").  The consequence of such a failure is that Ms. Butler concedes Southwest's version of events.  *See Smith v. Lanz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see also Wackett v. City of Beaver Dam*, 642 F.3d 578, 582 n.1 (7th Cir. 2011). The Court continues to apply the above articulated summary judgment standard, but Ms. Butler's failure to comply with the Local Rules in this respect "reduc[es] the pool" from which the facts and inferences may be drawn.  *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

From this already reduced pool, Ms. Butler's additional failures to comply with the Local Rules reduce the pool even further.  This is because, as Southwest points out, Ms. Butler rarely points to record evidence supporting her factual assertions as required by Federal Rule of Civil Procedure 56(c)(1).  For example, she purports to quote lengthy portions of page 163 of her deposition, [dkt. 49 at 8-10], but did not submit depositions excerpts to the Court along with her motion.[1]  This is inappropriate, as she must cite to "particular parts of materials *in the record*" to support her factual assertions.  Fed. R. Civ. P. 56(c)(1)(A) (emphasis added).

---

[1] Although Southwest did submit excerpts from Ms. Butler's deposition, [dkt. 34-2], it did not submit the entire deposition, and its excerpts do not include page 163 of Ms. Butler's deposition.

Even when Ms. Butler attempts to cite relevant evidence to support her factual assertions, she does not do so in the manner mandated by the Local Rules.  [Dkt. 51 at 4-7.]  Local Rule 56-1(e) provides in full:

> **e) Citations to Supporting Facts.**  A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence.  The evidence must be in the record or in an appendix to the brief.  *The citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence.*

Local Rule 56-1(e) (emphasis added); *see also* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing *to particular parts* of materials in the record . . . .") (emphasis added).  Citing an entire lengthy document without pointing the Court to the page or paragraph number where such evidence can be found fails to comply with the dictates of Local Rule 56-1(e).

Examples of this abound in Ms. Butler's brief.  In support of numerous propositions, Ms. Butler cites only "Exh. A," which is her twelve-page, one-hundred-thirty-six paragraph affidavit.  [*See, e.g.*, dkt. 49 at 2.]  This is insufficient under Local Rule 56-1(e) in that it does not provide the Court with the "page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence."  Local Rule 56-1(e).  Another example is found in a sentence indicative of Ms. Butler's approach to briefing this matter, in which she states: "In closing, the sheer volume of 'Genuine Issues of Material Facts' are too numerous to list but [Ms. Butler] prays this court review her affidavit and this brief as proof of this fact."  [Dkt. 49 at 18.]  As made explicit by Local Rule 56-1(b), it is Ms. Butler's obligation to list the genuine issues of material fact.  And while the Court of course reviews her brief, the Local Rules make clear that the Court is under no obligation to review the evidence, such as her lengthy affidavit, in any wholesale fashion unless she specifically directs the Court to certain portions of

6

it.  Indeed, the Seventh Circuit has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898, yet this is what Ms. Butler expects in failing to cite evidence to support most of her factual assertions or generally citing to lengthy documents in the record without pointing the Court to the specific "page or paragraph number," Local Rule 56-1(e).

Finally, there are instances where Ms. Butler cites evidence in support of a factual assertion, but the evidence cited in no way supports the assertion made.  For example, she states that she "contributed to [Southwest's] high [customer service] ranking within the industry with her professionalism and dedication to Customer Service," and cites a performance evaluation to prove this.  [Dkt. 49 at 2.]  But the performance evaluation to which she cites shows that she was given an overall rating of "N," which stands "Needs Improvement" and is the lowest rating available on the form.  [Dkt. 49-22 at 5-6.]

None of the above described briefing practices are appropriate; they are detrimental to both Ms. Butler's case and the Court's decisional process.  There will be consequences resulting from the failures, but they do not include an award of sanction.  The Court has also already determined that Ms. Butler's response brief was timely filed.  The Court therefore declines to impose monetary sanctions on Ms. Butler.

Ms. Butler's glaring failures to comply with the Federal and Local Rules in her response brief have consequences.  In deciding Southwest's Motion for Summary Judgment, the Court will only consider Ms. Butler's factual assertions that are supported by citations to record evidence that include the page or paragraph number or otherwise sufficiently direct the Court to the place in the cited documents that supports the factual assertion in accordance with Federal

7

Rule of Civil Procedure 56(c) and Local Rule 56-1(e).  Therefore, in setting forth the relevant factual background below, the Court provides a brief overview of the background facts necessary to understand Ms. Butler's claims as derived from the undisputed evidence—much of which is Southwest's evidence that Ms. Butler conceded as true by failing to file the *Statement of Material Facts in Dispute* section required by Local Rule 56-1(b).  *See Smith*, 321 F.3d at 683. Along the way, the Court will highlight the few relevant factual assertions on which Ms. Butler relies that she adequately supported with admissible evidence in accordance with Local Rule 56-1(e).

With respect to her proposed surreply, Ms. Butler primarily sought leave to file it so that she could address Southwest's request for sanctions against her.  She also sought to further her response to some of Southwest's substantive arguments.  [Dkt. 52 at 1-2.]  But none of Southwest's reply arguments—other than its request for sanctions—entitle Ms. Butler to file a surreply under the Local Rules.  The Local Rules permit the filing of a surreply "only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in response," Local Rule 56-1(d), neither of which apply here.  Instead, Southwest merely argues that there are consequences for Ms. Butler's failure to follow the Local Rules and failure to properly point to evidence in support of her factual assertions.  Ms. Butler therefore has no right to file a surreply under the Local Rules, and the Court will not permit her to have another attempt to file a cogent brief that properly cites to record evidence when this should have been done in the first instance.  Accordingly, the Court denies Ms. Butler's Motion for Leave to File Surreply. [Dkt. 52.]

### B.      Factual Background

Ms. Butler, who describes herself as either Black or African American, [dkt. 34-2 at 25], was raised in England and is of Jamaican descent, [dkt. 49-1 at 1].  She was hired by Southwest in October 1994 as a customer service agent ("CSA") in Indianapolis.  [Dkt. 49-1 at 2.]  After stints working for Southwest in Kansas City and Detroit, Ms. Butler returned in 2001 to Indianapolis to work for Southwest as a customer service supervisor ("CSS").  [*Id.*]  While on duty, CSSs would supervise CSAs.  [*Id.*]  Ms. Butler remained a CSS in Indianapolis until Southwest terminated her employment on May 19, 2011.  [Dkt. 34-11 at 1.]  She was 54 years old at the time of her termination.  [*Id.* at 2.]

During the course of her employment with Southwest, Ms. Butler complained regarding coworkers' treatment of her, while her coworkers also complained that she treated them harshly.  For example, during her time as a CSS, several of Ms. Butler's coworkers complained that she treated them in an unnecessarily harsh or unpleasant manner.  [*See, e.g.*, dkts. 49-6; 49-10; 49-16.]  In February 2008, then Indianapolis Station Manager Dave DeMeyer discussed the complaints against Ms. Butler with her.  [Dkt. 34-5 at 2.]  Mr. DeMeyer made clear to Ms. Butler that she needed to "immediately improve [her] Leadership skills" and that her failure to do so would "jeopardize [her] future with Southwest Airlines."  [*Id.*]  James Utick became the Indianapolis Station Manager in April 2010 and "[a]lmost immediately . . . began receiving complaints from [CSAs] and [CSSs] about [Ms.] Butler."  [Dkt. 34-1 at 1-2.]  He too stressed to Ms. Butler the need to improve her leadership skills, yet he continued to receive complaints regarding her conduct.  [*Id.* at 2.]

Ms. Butler presents evidence that, around this time in 2010, she was subjected to harsh treatment by her coworkers.  [Dkt. 49 at 12 (citing dkt. 49-1 at 4-6).]  Ms. Butler attests that she

was called "'buckwheat' to [her] face and 'that fucking Black bitch' over the telephone." [Dkt. 49-1 at 4.] She also produces evidence that, after Ms. Butler would instruct CSAs to comply with various Southwest policies, those CSAs would complain about her to Mr. Utick. [*Id.* at 4-6.] For example, a CSA complained about the manner in which Ms. Butler instructed her that a passenger was inappropriately dressed. [*Id.* at 5-6.] Ms. Butler also attests that CSAs would call her for assistance every time she would use the restroom merely to irritate her. [*Id.* at 6.]

On November 1, 2010, Mr. Utick again met with Ms. Butler to discuss the continuing complaints he was receiving regarding her treatment of other Southwest employees. [*Id.*] At the meeting, Ms. Butler told Mr. Utick that she thought employees were complaining about her because she was an African American female. [*Id.* at 3; *see* dkt. 34-2 at 46-47.] Mr. Utick informed Toni Hamilton, a Southwest Employee Relations Specialist located at Southwest's headquarters in Dallas, about Ms. Butler's complaint. [Dkts. 34-1 at 3; 34-2 at 47.] Ms. Butler spoke with Ms. Hamilton about her concerns on the phone. [Dkt. 34-2 at 47.] Ms. Hamilton then traveled to Indianapolis and interviewed several Southwest employees regarding Ms. Butler's allegations. [*Id.*] Ms. Butler attests that, in violation of Southwest policy, Ms. Hamilton did not conduct her investigation discretely, nor did she interview Stephanie Tyree, a CSA who had also complained about a hostile work environment. [Dkt. 49-1 at 7.] In the end, Ms. Hamilton concluded that Ms. Butler's allegations were unfounded. [Dkt. 34-2 at 52.]

Over the next few months, Mr. Utick did not believe that Ms. Butler's behavior toward other Southwest employees improved, and although he considered terminating her employment, he instead placed her on a Performance Improvement Plan ("PIP"), commencing on January 4, 2011. [Dkt. 34-1 at 3-4.] The PIP specifically stated that failure to improve would lead to termination, and Ms. Butler signed on to the PIP. [Dkt. 34-7 at 2.]

On April 5, 2011, Ms. Butler instructed fellow CSS, Missy Hawkins, to change Ms. Butler's shift differential logs in a manner that would entitle Ms. Butler to higher pay.[2]  [Dkt. 34-1 at 4.]  Although Ms. Hawkins informed Ms. Butler that the logs were incorrect, they were faxed to Southwest's headquarters.  [*Id.*]  Ms. Hawkins feared retaliation from Ms. Butler so she did not immediately report Ms. Butler's conduct.  [*Id.* at 5.]  Ms. Hawkins instead waited to see if Ms. Butler would work the hours reported on the shift differential log in the months following the false report, but Ms. Butler did not.  [*Id.*]  Ms. Hawkins felt "increasingly bad" about failing to report Ms. Butler's conduct, so in May 2011 she informed Mr. Utick about the false information on Ms. Butler's shift differential logs.  [*Id.*]  Mr. Utick's investigation into the matter revealed that shift differential logs for Ms. Butler stated that she was entitled to pay for hours that she did not actually work.  [*Id.* at 5-6.]  When Mr. Utick confronted Ms. Butler, she claimed that another employee was in charge of filling out the shift differential logs in question or that the logs must have been changed without her knowledge, and Ms. Butler denied instructing Ms. Hawkins to change the logs.  [*Id.* at 6-7.]  However, Mr. Utick did not believe these explanations were credible.  [*Id.* at 7.]  When asked about these payroll discrepancies during her deposition, Ms. Butler admitted to receiving $85 to which she was not entitled on several paychecks.  [Dkt. 34-2 at 42-44.]

---

[2] Even though at various points in her brief, Ms. Butler attempts to contest whether she intentionally altered the shift differential logs or instructed Ms. Hawkins to do so, [*see, e.g.*, dkt. 49 at 4, 5, 8-11], she did not even attempt to cite evidence supporting her position.  The closest she comes to doing so is quoting excerpts from her deposition.  [*Id.* at 8-10.]  However, as explained above, Ms. Butler did not submit her deposition as evidence, and thus it cannot be considered.  Therefore, due to Ms. Butler's failure to adequately contest this evidence, it is treated as true.  *See Smith*, 321 F.3d at 683.

In light of this conduct, Mr. Utick concluded that Ms. Butler's employment with Southwest should be terminated. [Dkt. 34-1 at 8.] Southwest's Regional Director agreed with Mr. Utick, and Southwest terminated Ms. Butler's employment on May 19, 2011. [*Id.*]

Ms. Butler filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 27, 2011. [Dkt. 34-11.] She alleged that she was terminated due to her race and age, retaliated against for engaging in a protected activity, and subjected to a hostile work environment. [*Id.* at 1-2.] She filed the instant suit on September 24, 2012 in state court, and Southwest timely removed the suit to this Court. [Dkts. 1; 1-1.]

### III.
#### DISCUSSION

#### A.    Time-Bared Claims

Southwest first contends that any allegations regarding allegedly discriminatory acts occurring prior to March 2, 2011, are time-barred. [Dkt. 35 at 15-16.] Ms. Butler responds that conduct occurring before that day can be considered as evidence supporting her claims. [Dkt. 49 at 16-17.]

In Indiana, charges of discrimination "must be filed within 300 days of the occurrence of the act that is the basis of the complaint." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir. 1994). Ms. Butler filed her Charge of Discrimination with the EEOC on December 27, 2011, and 300 days before that date is March 2, 2011. If a plaintiff does not file her charge within this window, "her claim is time-barred and [s]he may not recover." *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007). Although "[o]n claims other than hostile work environment claims, acts outside the statutory time period cannot be the basis of liability," Ms. Butler is correct that time-barred acts can function as evidentiary "support for a timely claim." *West v. Ortho-McNeil Pharm. Corp.*, 405 F.3d 578, 581 (7th Cir. 2005).

Therefore, to the extent acts occurring before March 11, 2011, lend support for Ms. Butler's claims, the Court will consider such evidence in assessing those claims. However, any conduct occurring before that date cannot be the sole basis of liability.

**B.      Age Discrimination**

The Court need not address Ms. Butler's age discrimination claim made pursuant to the Age Discrimination in Employment Act ("ADEA") at length. The ADEA makes it unlawful for an employer to discharge an employee due to that individual's age. *See* 29 U.S.C. § 623(a)(1). "[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).

There is no evidence that Ms. Butler's termination was in any way related to her age, let alone the but-for cause of it. It is undisputed that Mr. Utick made the decision that Southwest should terminate Ms. Butler's employment, and Southwest presents evidence that the basis for that termination was, among other things, the payroll issues involving Ms. Butler, rather than any discriminatory reason. [Dkt. 34-1 at 8.] Moreover, as Southwest correctly contends, during her deposition, Ms. Butler admitted that she was not discriminated against because of her age. [Dkt. 35 at 16.] She testified as follows:

Q.      All right. Do you think Jimmy Utick discriminated against you because of your age?

A.      No.

[Dkt. 34-2 at 61.] This concession alone entitles Southwest to summary judgment on Ms. Butler's ADEA claim.

But even if this concession were not enough, Ms. Butler failed to even respond to Southwest's position that her ADEA claim must fail. Specifically, Ms. Butler presents no

evidence disputing Southwest's evidence that it terminated Ms. Butler for reasons unrelated to her age.

Accordingly, for either of the foregoing reasons, Southwest is entitled to summary judgment on Ms. Butler's ADEA claim.

### C.    Race Discrimination and Retaliation

Ms. Butler also brings claims against Southwest under Title VII, alleging that she was terminated because of her race and, alternatively, in retaliation for her complaint to Southwest about racial harassment.[3]  Ms. Butler can prove such claims under either the direct or indirect method.  *See Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1068 (7th Cir. 2012).

To proceed under the direct method for her discrimination claim, Ms. Butler must point to "direct evidence of animus—the so-called 'smoking gun.'"  *Van Antwerp v. City of Peoria*, 627 F.3d 295, 298 (7th Cir. 2010).  This "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus."  *Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) (citations and quotation marks omitted).  With respect to Ms. Butler's retaliation claim, the direct method requires evidence that she "(1) engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) there was a causal connection between the two."  *Northington v. H&M Int'l*,

---

[3] Although the Court does not rest its decision solely on this ground, Ms. Butler conceded in her deposition that Ms. Utick, who made the decision to terminate her employment with Southwest, [dkt. 34-1 at 8], did not do so because of her race, [*see* dkt. 34-2 at 61 ("Q. . . . Do you think [Mr.] Utick did anything bad to you because of your race?  A.  I don't believe he did . . . .").] This concession provides an alternative basis for granting summary judgment in Southwest's favor on Ms. Butler's discrimination and retaliation claims.

712 F.3d 1062, 1065 (7th Cir. 2013).  Although Ms. Butler purports to have such evidence, she cites none, [dkt. 49 at 3-4],[4] and therefore she must proceed under the indirect method.

Under the indirect method, Ms. Butler must produce evidence that: "(1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of her protected class were treated more favorably." *Goodwin v. Bd. of Trustees of Univ. of Ill.*, 442 F.3d 611, 617 (7th Cir. 2006).  These are the same elements she must prove for her retaliation claim, except that "instead of proving membership in a protected class, she [must produce] evidence that she engaged in statutorily protected activity." *Williams v. Shinseki*, 373 Fed. Appx. 611, 615 (7th Cir. 2010).

The parties do not dispute that Ms. Butler suffered an adverse employment action when Southwest terminated her employment or that Ms. Butler is a member of a protected class. Furthermore, even though Southwest disputes whether Ms. Butler engaged in a protected activity by complaining about discrimination, [dkt. 35 at 20], the Court will assume without deciding that she did because, in the end, the Court concludes that she cannot establish the fourth element of her prima facie case—an element necessary to establish for both her discrimination and retaliation claims.[5]

---

[4] Ms. Butler asserts several facts that she contends are sufficient to meet the three elements of her retaliation claim.  [Dkt. 49 at 4.]  However, as discussed in the Background section above, Ms. Butler fails to even attempt to cite record evidence to support these assertions in violation of the Local Rules.  Moreover, the Federal Rules make clear that the Court "need consider only the cited materials."  Fed. R. Civ. P. 56(c)(3).  Without evidence in support of her assertions, Ms. Butler cannot proceed under the direct method.  Notably, even if there was evidence in support of these assertions, none of them demonstrate that there was a causal connection between Ms. Butler's protected activity—complaining to Southwest about discrimination—and her termination.  Thus, for this additional reason, Ms. Butler cannot proceed under the direct method for her retaliation claim.

[5] Southwest contends that summary judgment is also appropriate because Ms. Butler cannot establish that she was performing her legitimate performance expectations.  [Dkt. 35 at 18-19.]

There is no "'magic formula for determining whether someone is similarly situated.'" *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 636 (7th Cir. 2001)). "Instead, courts should apply a 'common-sense' factual inquiry—essentially, are there enough common features between the individuals to allow a meaningful comparison?" *Id.* (quoting *Chavez*, 251 F.3d at 636). In short, the similarly situated inquiry "asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination or retaliation." *Id.*

Ms. Butler points to one Southwest employee that she contends was similarly situated: Ms. Hawkins. [Dkt. 49 at 4-5, 12.] Specifically, Ms. Butler contends that she and Ms. Hawkins, who is Caucasian, are similarly situated in all material respects except for race. [Dkt. 49 at 4-5, 12.] Despite this, Ms. Butler maintains, she was purportedly fired over the payroll issue while Ms. Hawkins was not. [*Id.* at 5, 12.] Simply put, Ms. Butler argues that, "[h]ad time actually been stolen [from Southwest], both [Ms. Butler] and [Ms.] Hawkins should have been terminated." [*Id.* at 12.]

Southwest replies that Ms. Hawkins is not similarly situated with Ms. Butler because their respective roles in the improper payroll conduct were drastically different. As Southwest explains, Ms. Butler "directed [Ms.] Hawkins to falsify company documents and [Ms.] Hawkins reported [Ms. Butler's] behavior. [Ms. Hawkins] did not falsify company documents concerning her own shift differentials, and [Ms.] Hawkins did not receive shift differentials to which she was not entitled." [Dkt. 51 at 9.]

---

Because the Court concludes that Ms. Butler fails to establish the fourth prong of the prima facie case, it need not address whether this constitutes an alternative basis for summary judgment.

Before discussing the merits of the parties' positions, the Court must again reiterate that Ms. Butler utterly failed to direct the Court to relevant evidence supporting her contention that Ms. Hawkins is similarly situated.  Although Ms. Butler asserts on several occasions in her response brief that Ms. Hawkins in similarly situated, [*see, e.g.*, dkt. 49 at 4-5, 7, 12], amidst these assertions is only one instance of a proper citation to admissible evidence.  Specifically, Ms. Butler cites Southwest's Ground Operations Employee Handbook Rule #40, which states that "'[t]ime theft will result in termination.'"  [*Id.* at 12 (quoting dkt. 49-3 at 4).]  Standing alone, this is not evidence regarding Ms. Butler's situation vis-à-vis Ms. Hawkins, and thus is insufficient for Ms. Butler to prove the similarly situated element of the prima facie test.  The Court could rest its decision on this ground alone.

Nevertheless, even if Ms. Butler had appropriately directed the Court to evidence supporting her assertions, she still would fall short of establishing this element.  The crux of Ms. Butler's argument is that she was terminated while Ms. Hawkins was not, even though Southwest believed they both were involved in submitting false payroll documents.  [Dkt. 49 at 12.]  Although true that Ms. Butler and Ms. Hawkins were both supervisors who had at least some involvement in improper payroll conduct, the Court cannot conclude that they were similarly situated.  The reason for this is simple: Ms. Butler engaged in conduct significantly more culpable than that of Ms. Hawkins.

The undisputed evidence shows that Southwest's investigation revealed that in early April 2011, Ms. Butler instructed Ms. Hawkins to change Ms. Butler's shift differential logs in a manner that would entitle Ms. Butler to higher pay.  [Dkt. 34-1 at 4.]  Ms. Hawkins feared retaliation from Ms. Butler so she did not immediately report Ms. Butler's conduct; instead, she waited to see if Ms. Butler would indeed work the hours reported on the shift differential log in

17

the months following the false report, but Ms. Butler did not.  [*Id.* at 5.]  Ms. Hawkins felt "increasingly bad" about failing to report Ms. Butler's conduct, so in May 2011 she informed Mr. Utick about the false information on Ms. Butler's shift differential logs.  [*Id.*]  Mr. Utick's investigation into the matter revealed that shift differential logs for Ms. Butler stated that she was entitled to pay for hours that she did not actually work.  [*See id.* at 5-6.]

This evidence makes clear that Ms. Butler and Ms. Hawkins were not similarly situated such that a jury could infer that Southwest's termination of Ms. Butler was discriminatory or retaliatory.  *See Humphries*, 474 F.3d at 405.  Southwest's investigation revealed that Ms. Butler directed another employee (Ms. Hawkins) to falsify payroll forms so that she would receive pay to which she was not entitled.  Although Ms. Hawkins at least somewhat complicit in this conduct, her culpability is markedly different given that Ms. Hawkins was not herself enriched by the conduct and she eventually alerted Southwest to what had occurred.  Simply put, Ms. Butler's and Ms. Hawkins' relative culpability explains Southwest's differential treatment of them in such a way that no discriminatory inference can be drawn from the differential treatment.[6]  Therefore, for this additional reason, Ms. Butler failed to establish the similarly situated element for a prima facie claim of discrimination or retaliation, making summary judgment in favor of Southwest proper.

---

[6] The Court notes that even if Ms. Butler properly submitted evidence that she did not alter the shift differential logs (which she did not), whether Ms. Butler ultimately changed the logs is irrelevant to the similarly situated inquiry.  The important point is that the undisputed evidence demonstrates that Southwest honestly believed that Ms. Butler had done so.  Therefore, in light of this belief, an inference of racial discrimination cannot be drawn from Southwest's differential treatment of Ms. Butler and Ms. Hawkins.  *See Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 740 (7th Cir. 2013) ("[The Court] do[es] not ask in Title VII cases whether the reason for firing was inaccurate or unfair, or whether the employer was wrong about its employee's performance, or may be too hard on its employee.") (citation and quotation marks omitted).

### D.      Hostile Work Environment

The Court turns lastly to Ms. Butler's Title VII hostile work environment claim. Although not entirely clear from Ms. Butler's briefing, it appears that her hostile work environment claim is predicated solely on allegations of a racially hostile work environment. [*See, e.g.*, Dkt. 49 at 13 ("When [Mr.] Utick asked why [Ms.] Butler believed her fellow employees were hostile [Ms. Butler] told [Mr.] Utick it was because of her race.").]   "An actionable hostile environment claim requires the plaintiff to prove: (1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability." *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005); *see Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000).

Southwest contends that summary judgment on Ms. Butler's hostile work environment claim is appropriate for several reasons.  First, Southwest argues that almost all of the conduct that Ms. Butler contends created the hostile work environment occurred prior to March 2, 2011, and thus such conduct cannot be considered.  [Dkt. 35 at 22-23.]  Second, even if such conduct is considered, Southwest maintains that the conduct was not severe and pervasive enough to establish the third element of her claim.  [*Id.* at 23-25.]  Finally, Southwest maintains that the fourth element cannot be met because there is no "basis for employer liability."  [*Id.* at 25.]

Ms. Butler again fails to respond with a cogent argument tailored to all the required elements of her hostile work environment claim, and she does not specifically respond to Southwest's arguments as to why summary judgment is proper.  [*See* dkt. 49 at 12-16.]  She cites evidence that could be relevant to her claim—which the Court addresses further below—but

seemingly does so in relation to her discrimination claims.  [*See id.* at 12-13.]  Once she explicitly begins addressing the elements of her hostile work environment claim, she only twice cites evidence in support of her claim.  [*See id.* at 15-16.]  These examples are illustrative of the deficiencies in Ms. Butler's briefing and the difficulties these deficiencies caused the Court in adequately addressing her claims.  First, Ms. Butler argues:

> Once her co-workers knew she had been reprimanded for allegedly not offering assistance, they would often radio her immediately upon seeing her take a restroom break.  *See* [dkt. 49-1 at 6 ¶ 56-58.]  This conduct was severe and pervasive so as to alter the conditions of [her] environment and create a hostile and abusive work environment.  *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000).  As a result, all four prongs for proving a hostile work environment are met.

[Dkt. 49 at 15.]  This sole assertion regarding CSAs radioing Ms. Butler when she would use the restroom does not, of course, establish "all four prongs" of her hostile work environment claim.  Indeed, by itself, it establishes none of them.  Second, Ms. Butler argues: "While not loud or aggressive, employees and supervisors were mean and inconsiderate on a daily basis by not allowing [her] the sanctity of a restroom break and other examples when considered in totality created and caused a hostile work environment.  *See* [dkt. 49-1]."  [Dkt. 49 at 16.]  As discussed at length above, Ms. Butler's citation to her entire affidavit is insufficient under the Local Rules.  In sum, Ms. Butler's utter failure to properly point to evidence supporting the four elements of her hostile work environment claim and cogently explain why those four elements are met is a sufficient basis to conclude that summary judgment in Southwest's favor is proper.

The Court need not, however, rest its conclusion solely on these grounds.  Even if the Court considers additional evidence cited by Ms. Butler—evidence that was not accompanied by helpful analysis or tailored to the elements of a hostile work environment claim—this evidence is also insufficient.  In a wholesale manner, Ms. Butler points the Court to large

portions of her affidavit. [*See* dkt. 49 at 12-13.] In her affidavit, she attests that sometime in 2010 she was called "'buckwheat' to [her] face and 'that fucking Black bitch' over the telephone." [Dkt. 49-1 at 4.] Further, she points to several instances where CSAs would complain about her to Mr. Utick after Ms. Butler would instruct them to comply with various Southwest policies. [*See id.* at 5-6.] Examples include complaints to Mr. Utick by CSAs after Ms. Butler instructed them that a passenger was inappropriately dressed or that a passenger's luggage was overweight. [*Id.*] Finally, as noted above, Ms. Butler attests that CSAs would call her for assistance every time she would use the restroom. [*Id.* at 6.]

Southwest is correct that this evidence is insufficient to establish the third element of Ms. Butler's hostile work environment claim—namely, that "the harassment was severe and pervasive so as to alter the conditions of the employee's environment and create a hostile or abusive working environment."[7] *Mason*, 233 F.3d at 1043. As the Seventh Circuit reaffirmed as recently as a week ago, the factors the Court may consider "in deciding whether the environment is hostile include the frequency of the discriminatory conduct; its severity;

---

[7] Southwest is not correct in arguing that conduct occurring before March 2, 2011, cannot be considered in assessing whether a hostile work environment existed. [Dkt. 35 at 22-23.] The Supreme Court has made clear that, given the nature of hostile work environment claims—specifically, that they "cannot be said to occur on any particular day" and instead "occur[] over a series of days or perhaps years"—as long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *see also Vance v. Ball State Univ.*, 646 F.3d 461, 468-69 (7th Cir. 2011). However, Ms. Butler still had to file her "EEOC charge within 300 days of the last hostile act in a continuous and ongoing hostile work environment." *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011). As explained further below, the only evidence to which Ms. Butler points that could contribute to creating a racially hostile work environment are two racial comments made prior to March 2, 2011, as the other conduct on which she relies was not racial in nature. Thus, Ms. Butler fails to point to a racially hostile act that occurred within the 300 days after she filed her EEOC charge. This is an independent basis to conclude that summary judgment in Southwest's favor is appropriate. *See id.* (affirming the grant of summary judgment to defendant because plaintiff presented no evidence that would "allow a jury to find that any action after [the 300-day window] contributed to a hostile work environment").

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alexander v. Casino Queen, Inc.*, --- F.3d ----, 2014 WL 57947, *9 (7th Cir. 2014) (citation and quotation marks omitted). "[T]he workplace that is actionable is the one that is hellish." *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004) (citations and quotation marks omitted).

Beginning with Ms. Butler's evidence that she was called racially charged offensive names on two occasions, the Court views such conduct as abhorrent and inappropriate. For the purposes of a hostile work environment claim, however, the Seventh Circuit has time and again held that such isolated remarks, even when unambiguously racial and offensive in nature, are insufficient to create a hostile work environment under Title VII. *See Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 648-49 (7th Cir. 2011) (collecting cases). Simply put, Ms. Butler identifies two racially offensive comments made by coworkers over the course of her sixteen year employment with Southwest, which do not create a hostile work environment under Title VII. *See Ellis*, 650 F.3d at 649 (citing *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002), for the proposition that a "handful of offensive comments, most of which were by fellow employees over a year-and-a-half period, were not sufficient to raise a jury issue").

The other conduct to which Ms. Butler points—CSAs' complaints about her for merely attempting to enforce Southwest's policies and calling her every time she used the restroom— does nothing to advance Ms. Butler's hostile work environment claim. Conduct cannot aid in creating a hostile work environment unless it has "a racial character or purpose." *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004); *see Vance*, 646 F.3d at 470. Ms. Butler does not point to any evidence that would allow a reasonable jury to conclude that CSAs

complained about her or called her each time she attempted to use the restroom because of her race.  Because this evidence fails to advance Ms. Butler's hostile work environment claim at all, the third element of her claim is not met and summary judgment in favor of Southwest is warranted.[8]

## IV.
### CONCLUSION

For the reasons explained, the Court **GRANTS** Southwest's Motion for Summary Judgment, [dkt. 34], and **DENIES** Ms. Butler's Motion for Leave to File Surreply, [dkt. 52]. Judgment will issue accordingly.

01/16/2014

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[8] Another ground on which Southwest is entitled to summary judgment on Ms. Butler's hostile work environment claim stems from her failure to address—let alone establish—employer liability.  To meet this element, Ms. Butler must adduce evidence that Southwest "failed to take reasonable steps to remedy the harassment once" Ms. Butler complained of it.  *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976 (7th Cir. 2004) (quoting *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811 (7th Cir. 2001)) (quotation marks omitted).  Although Ms. Butler sporadically criticizes the manner in which Southwest investigated her allegations of a racially hostile work environment, [*see, e.g.*, dkt. 49 at 12-13 (citing dkt. 49-1)], she does not do so in an attempt to establish employer liability.  She does not even assert, let alone cogently explain with citation to relevant authorities, why Southwest's investigation and response to her complaint were unreasonable.  The Court need not decide whether they were, as Ms. Butler's failure to carry her burden on this element provides yet another basis for summary judgment in Southwest's favor.

**<u>Distribution via ECF</u>:**

Kimberly J. Bacon
BACON & LANE, LLC
suite800law@att.net

Katherine Summers Scarbrough
CONSTANGY BROOKS & SMITH, LLP
kscarbrough@constangy.com

Teresa Rider Bult
CONSTANGY BROOKS & SMITH, LLP
tbult@constangy.com

Blake J. Burgan
TAFT STETTINIUS & HOLLISTER LLP
bburgan@taftlaw.com

Danielle Beth Tucker
TAFT STETTINIUS & HOLLISTER LLP
dtucker@taftlaw.com